# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

RAMIC ELDIN

                                       Plaintiff,

                                                        6:15-CV-440

         v.                                                 (MAD/ATB)

VELDIN BARBER, et al.,

                                       Defendants.

RAMIC ELDIN, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiff Ramic Eldin. (Dkt. No. 1) Plaintiff Eldin has also filed an application to proceed in forma pauperis ("IFP") and a motion for appointment of counsel. (Dkt. Nos. 3, 4). For the following reasons, this court will grant plaintiff's IFP application, but will recommend dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

## I.    <u>In Forma Pauperis ("IFP") Application</u>

A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). The court finds for purposes of this recommendation, that plaintiff meets the financial criteria for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in

the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II. Complaint

The complaint is very short, but almost impossible to read, and it is difficult to determine what plaintiff is asking from the court. (Complaint ("Compl.") (Dkt. No. 1). There is no relief requested in the form-complaint.[1] (Compl. at ¶ 6). Plaintiff has attached a thirty-eight page exhibit to his complaint, and the court will attempt to read all plaintiff's submissions together to determine whether there is any possibility that a claim may be stated. Essentially, plaintiff complains that someone at the Veldin Barber Shop in Utica, New York, perhaps the barber's son,[2] is implanting surveillance equipment into plaintiff's head. Plaintiff claims that he has been the "victim" of "psychotronic weapons" for fifteen years, and is likely a "microwave victim." (Compl. at ¶ 5).

The court notes that the first page of plaintiff's exhibit contains one line in addition to his signature: "I want to reopen 6:04-CV-241." (Dkt. No. 1-1 at 1). In

---

[1] The section of the form-complaint has been left blank.

[2] One of the documents attached to the complaint states that the owner of the barber shop is "Elvis Miljkovic." (Dkt. No. 1-1 at 6). Another document states that Elvis Miljkovic is the barber's son and works for the Sheriff's Department (not the Utica Police). This document appears to state that Mr. Mijkovic makes a lot of mistakes cutting hair, "as he is using blade [sic] that he covers with chemical [sic] that is numbing and then he implants microchips behind [both] ears." (Dkt. No. 1-1 at 2). There is no date on this document, and it is unclear even from the text when it was written.

3

04-CV-241, plaintiff sued L.B. Security Company and the Utica Police Department. On June 4, 2004, U.S. District Court Judge David N. Hurd dismissed plaintiff's amended complaint because it did not state a claim for relief. (Dkt. No. 8 in 04-CV-241). Judge Hurd had given plaintiff the opportunity to file an amended complaint when the original failed to comply with the Federal Rules. (Dkt. No. 4 in 04-CV-241).

The amended complaint did not cure the defects outlined by Judge Hurd. The amended complaint contained no specific allegations of fact, but was filled with "sweeping allegations that various parties and institutions were placing hidden surveillance equipment in his residence and the posting the acquired information on the internet." (Id. at 2) (footnote omitted). Notwithstanding the dismissal, plaintiff continued to file documents that were stricken by the court in 2005. (Dkt. Nos. 17-20). On April 6, 2015, plaintiff filed a letter/motion to "reopen" the case. (Dkt. No. 22). On April 10, 2015, Judge Hurd denied the plaintiff's motion and ordered that plaintiff was precluded from filing any additional papers in 04-CV-241 without prior approval of the court. On April 13, 2015, plaintiff filed this new action.

Several of the documents contained in plaintiff's current exhibit are documents that were filed in 04-CV-241. (Dkt. No. 1-1 at CM/ECF pp. 7, 10-12). Plaintiff apparently believes that he has acquired information since his case was dismissed in 2004 that would substantiate plaintiff's claims. He has included two type-written

4

documents that detail his belief about the barber shop and its owner (neither of whom are named Veldin). (Dkt. No. 1-1 at 2-4). In the first memorandum, plaintiff states that the father of the "current" owner of a barbershop, a "deranged elderly man . . . cuts hear [sic] wau above the ears that opens him a space to cut in a skin and implant electrodes, microchips behind the ears . . . ." (*Id.* at 2). Plaintiff later mentions that there is likely an implant in his arm, one in his eye that was removed, and gas that is activated by a device within his nose. (*Id.* at 3).

Plaintiff alleges that when he attempted to bring this information to the federal court, he was ignored. (*Id.* at 3). Plaintiff states that there is "something shady going on" because instead of meeting him in court, "they" threatened him through microwaves that if he went to court, he would never be able to find a job again. (*Id.* at 4). Plaintiff is very concerned about mind control attempts. He attempted to move to Europe, but he was told through microwaves to return to the United States. He hoped that the torture would stop after he came back to the United States, but this "mental water boarding" has continued to the present time. (*Id.*)

Plaintiff has also included a memorandum that is dated January 14, 2005. (Dkt. No. 1-1 at 5). This memorandum may have been written by an attorney, because plaintiff is referred to as "client" throughout the document. This document begins by stating that "Client had previously started a lawsuit in Federal Court and that law suit was dismissed." (*Id.*) The memorandum states that the "client" feels that a chip has

5

been implanted in his eyes, so that "he has a sort of tracking device so that they will know where he is at all times." (*Id.*) The chip was implanted in 2002 when plaintiff went to Sangertown Mall for a Glaucoma test. (*Id.*) Plaintiff believed that LB Security of Utica (a defendant in 04-CV-241); the Utica Police Department; the FBI; and potentially Mohawk Valley Community College ("MVCC") were involved in the surveillance. He thought that MVCC may have been using him as a research object for approximately three years. (*Id.*)

In this action, plaintiff's exhibit also contains a series of pages that appear to be printed from the Internet. (Dkt. No. 1-1 at 14-38). The pages list articles which relate to many different subjects, but many deal with mind control; human robotization; the CIA; psychotronic government mind control; and remote neural monitoring. Plaintiff also includes a series of excerpts from "Mind Control News Articles." (*Id.* at 27-38). Plaintiff alleges that these problems are destroying his employment and his life. (Compl. at p.4-5). Plaintiff claims that he can not have a family, hold down a job, or own property because of this mind control.[3]

## III. Jurisdiction

### A. Legal Standards

Subject matter jurisdiction can never be waived or forfeited. *ACCD Global*

---

[3] Plaintiff asserts various other facts, but this court will not elaborate on everything that is written in plaintiff's documents.

*Agriculture, Inc. v. Perry*, No. 12 Civ. 6286, 2013 WL 840706, at *1 (S.D.N.Y. March 1, 2013) (quoting *Dumann Realty, LLC v. Faust,* No. 09 Civ. 7651, 2013 WL 30672, at *1 (S.D.N.Y. Jan. 3, 2013) (citing *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 648 (2012); *Henderson ex rel. Henderson v. Shinseki*, __ U.S. __, 131 S. Ct. 1197, 1202 (2011)). Federal courts are mandated to examine their own jurisdiction sua sponte at every stage of the litigation. *Id.*

Plaintiff is pro se, and the court must interpret plaintiff's complaint liberally. *Sealed Plaintiff v. Sealed Defendants*, 537 F.3d 185, 191 (2d Cir. 2008). The court considers all possible grounds for relief that plaintiff could be raising. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein). Thus, the court will consider possible bases for plaintiff's assertion of jurisdiction.

Federal question jurisdiction pursuant to 28 U.S.C. § 1331 provides a basis for jurisdiction when the plaintiff brings a civil action that arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiff filed this complaint on a form reserved for civil rights actions under 42 U.S.C. § 1983. To state a claim under section 1983, the plaintiff must allege both that the defendant has violated plaintiff's rights under either the Constitution or laws of the United States and that the defendant acted "under color of state law." *Rae v. City of Suffolk*, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010); 42 U.S.C. § 1983.

7

A person acts under color of state law when he or she acts in his or her official capacity "clothed with the authority of state law," or acts under "pretense" of law by purporting to act with official power. *Pleasure Island, Inc. v. City of New York*, No. 12 Civ. 4699, 2013 WL 2311837, at *5-6 (E.D.N.Y. May 24, 2013) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). The requirement that the defendant acted under "color of state law" is jurisdictional. *Lucas v. Riggi*, No. 07-CV-6200, 2008 WL 4758706, at *2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk County v. Dodson*, 454 U.S. 312, 315 (1981)). Private conduct is simply beyond the reach of section 1983 "'no matter how discriminatory or wrongful" that conduct may be." *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)).

A private party may act under color of state law if he or she engages in conduct that constitutes willful participation in joint activity with the state. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam). The nexus to the state must be so close as to be fairly treated as that of the state itself. *Tancredi v. Metro Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted).

**B.    Application**

Plaintiff has named "Veldin Barber" as a defendant. As stated above, it appears that this is not an individual, but rather a barber "shop" in Utica. Plaintiff does not allege that the "shop" has done anything to harm plaintiff, and the shop is not an entity that may be sued. In fact, the form-complaint filed by plaintiff does not mention the

barber or the barber shop. The form-complaint is a series of random statements about how plaintiff has been tortured by mind control, psychotronic weapons, and microwaves for fifteen years. (Dkt. No. 1).

Assuming that plaintiff wished to name a specific barber in the barber shop, that private individual would not act under color of state law. There would be no jurisdiction to sue that person under section 1983. While a private party may act under color of state law if he or she conspires with a state actor, plaintiff does not allege a conspiracy between the barber and the "police." In fact, the form-complaint does not even mention police. The court notes that plaintiff named the "police" in 04-CV-241, but there is absolutely no indication that the barber has conspired with anyone acting under color of state law.[4] Thus, the complaint may be dismissed as against "Veldin Barber," whether plaintiff was referring to an individual or to the barber shop.

## IV. Police Department

### A. Legal Standards

Departments that are merely administrative arms of a municipality do not have a legal identity separate from the municipality and may not sue or be sued. *Rose v. County of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. Nov. 9, 2012) (citing *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) (dismissing claim

---

[4] Even if plaintiff had mentioned the police, conclusory allegations of conspiracy are insufficient to state a claim under section 1983. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (conslusory allegations are insufficient to state a constitutional claim).

against the police department); *Polite v. Town of Clarkstown*, 60 F. Supp. 2d 214, 216 (S.D.N.Y. 1999) (same); *Umhey v. County of Orange*, 957 F. Supp. 525, 530–31 (S.D.N.Y. 1997) (dismissing case against the County Board of Ethics); *Wilson v. City of New York*, 800 F. Supp. 1098, 1101 (E.D.N.Y. 1992) (dismissing against police department). Therefore, claims asserted under 42 U.S.C. § 1983 will be dismissed against an administrative department or sub-division of a municipality or county. *Id*. *See also Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y.1999) (because the county sheriff's office was an administrative arm of the county, it was not the appropriate party in a section 1983 action)).

### B. Application

In this case, the plaintiff names the "Police" as a defendant. Plaintiff may not sue the Police Department or the "Police" collectively unless he names specific police officers. Generally, if a pro se plaintiff names the wrong defendant, the court could substitute City of Utica for the "Police," however, as discussed below, even if plaintiff had named the proper municipal defendant, the court would still be constrained to recommend dismissal.

## IV. Municipal Liability

### A. Legal Standards

A municipality itself may be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the

limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *LaVertu v. Town of Huntington*, No. 13-CV-4378, 2014 WL 2475566, at *3 (E.D.N.Y. Apr. 4, 2014) (citing inter alia *Los Angeles County, Cal. v. Humphries*, __ U.S. __, 131 S. Ct. 447, 452 (2010)), *Rep't Rec. adopted in relevant part*, 2014 WL 2506217 (E.D.N.Y. June 2, 2014). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson*, __ U.S. __, 131 S. Ct. 1350, 1359 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly. Finally, municipal liability can, under certain circumstances, be based upon a failure to properly train the municipality's employees. *See City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989).

### B. Application

There is absolutely no indication in this case that a claim of municipal liability is

alleged. As stated above, plaintiff barely mentions the police in any of his documents. He does mention the Utica Police Department in one of the documents contained in his exhibit. (Dkt. No. 1-1 at 7). However, it is a document, dated February 1, 2004. It was submitted in support of plaintiff's previous action, which was dismissed by Judge Hurd. This document consists of a memorandum, written by plaintiff outlining how he submitted a complaint to an officer in the Utica Police Department, but states that the officer's response was insufficient, and plaintiff's complaint about "surveillance" was not resolved. First, plaintiff has no right to have the police investigate any claim;[5] second, Judge Hurd considered this document when dismissing the prior action; and third, if plaintiff is referring to the same incident as he described to Judge Hurd, the three year statute of limitations has run.[6] There is no indication that there was a

---

[5] A plaintiff has no constitutional right to an investigation. *See e.g. Chavis v. Chappius*, No. 06-CV-543, 2015 WL 1472117, at *16 (W.D.N.Y. Mar. 31, 2015) (no right to an investigation, and the failure to investigate did not cause plaintiff's injury) (citing *Berstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (courts in the Second Circuit have determined that there is no constitutional right to an investigation by government officials)); *Hunter v. City of New York*, 35 F. Supp. 3d 310, 328 n.17 (E.D.N.Y. 2014) (citing cases).

[6] Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In New York State, the relevant limitations period is three years. *Owens v. Okure*, 488 U.S. 235, 250-51 (1989). See N.Y. Civ. Prac. L & R. § 214(5). The federal court also borrows the tolling provisions for the state statute of limitations. *See Board of Regents v. Tomanio*, 446 U.S. 478, 483 (1980). *See also Woods v. Candela*, 13 F.3d 574, 576 (2d Cir.), *vacated on other grounds*, 513 U.S. 810 (1994). The statute of limitations begins to run on the date that plaintiff's claim accrued, which is the date that plaintiff has a complete and present cause of action and can file suit and obtain relief. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Assuming that the above is plaintiff's claim against the "Police," his cause of action would have accrued in 2004 when the police refused to investigate his claims. He clearly knew about the cause of action then because he raised the issue before Judge Hurd.

municipal policy involved. Thus, the court will not order substitution of the City of Utica as a defendant, and the action may be dismissed as against the Police.

## V. Opportunity to Amend

### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

In this case, plaintiff is concerned that he is the victim of microwaves and psychotronic weapons. He brought an action making similar, if not identical, claims against some of the same defendants in 2004, and Judge Hurd dismissed the action. Judge Hurd denied plaintiff the opportunity to reopen his 2004 action, and a few days later, he returned with this new case, making the same claims. Although plaintiff has attached a variety of updated articles that he has obtained from the Internet, discussing microwaves, psychotronic weapons, and mind control, his complaint is still rambling and disjointed. Even construing plaintiff's complaint to raise the "strongest arguments," the court finds that plaintiff has presented factual contentions that are

13

"clearly baseless." *Neitzke*, 490 U.S. at 327. No attempt to amend will cure the problems with this complaint.

IX. **Appointment of Counsel**

    A. **Legal Standards**

There is no bright-line test for determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). A number of factors must be carefully considered by the court in ruling upon the motion. The court must first assess whether the indigent's claims seem likely to be of substance. If so, the court then considers:

> [t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). Each case must be decided on its own facts, and the court may consider any or all of the above factors in its determination. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

    B. **Application**

Based upon a thorough review of the complaint, this court finds that plaintiff's

complaint is frivolous and must be dismissed with prejudice. Thus, the complaint does not meet the first requirement for appointment of counsel, and plaintiff's application is denied.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's application to proceed IFP (Dkt. No. 3) is **GRANTED FOR PURPOSES OF FILING ONLY**, and it is

**ORDERED**, that plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED**, and it is

**RECOMMENDED**, that this action be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i-ii) as frivolous and for failure to state a claim.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: April 20, 2015

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge